COLMER-GREEN LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20916. Promulgated May 31, 1928.

*John J. Finnorn, Esq.*, for the petitioner.
*A. S. Lisenby, Esq.*, for the respondent.

258

TRAMMELL: The issues involved in this proceeding are: (1) Whether the assessment and collection of the deficiency for 1919 are barred by the running of the period of limitations provided in the statute, (2) if in the event the deficiency for 1919 is not found to be barred whether the petitioner is entitled to a deduction of $6,390 as the result of a loss sustained on the sale of certain turpentine rights, and (3) whether the petitioner is entitled to an additional allowance for depreciation for 1920.

With respect to the first issue, the petitioner contends that the return filed on May 15, 1920, was the required return, and that the running of the period of limitations began from that date. The respondent contends that the return filed on May 15, 1920, was not the return required by law and that the period of limitations did not begin to run until the filing of the separate return on December 15, 1921.

The schedules showing the balance sheet and analysis of surplus attached to the return filed on May 15, 1920, show separately assets and liabilities of each of the corporations for which the consolidated return was being made, but did not show separately the items of income and deductions applicable to each.

Was that return the return required by statute for the purpose of starting the running of the period of limitations? The respondent contends that it was not, since it was a consolidated return which did not show separately the items of income and deductions and the information required by the printed instructions appearing on the return and that a consolidated return was not required by statute for the two corporations.

In *Stetson & Ellison*, 11 B. T. A. 397, we said:

Where a consolidated return has been prepared and filed in good faith, and the names of the companies included in the consolidation are made clear to the respondent, and all of the "items of gross income and the deductions" are included therein, although said items of income and deductions may not be in sufficient detail to enable the respondent to accurately compute the tax against each of the companies, there is a "substantial" compliance with the statute.

The return indicated on its face that more than 50 per cent of the voting capital stock of two corporations was owned or controlled by the same interests. In view of the regulations and rulings of the

Treasury Department with respect to consolidated returns and the uncertainty as to a definite basis for such returns, and the fact that the respondent raises no question as to the petitioner's good faith in filing a consolidated return, we think that such return was filed in good faith.

On the return appear the names of the two corporations with their respective addresses, and a statement that it is a consolidated return. Although the items of income and deductions for the respective companies were not segregated as to each company, all items of income and deductions were included in the returns. We think that the consolidated return under the facts and circumstances was sufficient to start the running of the period of limitations. The statute does not require that such a return include the separate income and deductions of each corporation. The regulations of the Commissioner, approved by the Secretary, however, do provide that statements and schedules shall be filed giving details of the items of gross income and deductions. Whether the regulations were complied with, the Commissioner had the opportunity to determine. The respondent had an opportunity to audit the return and to determine whether it set forth the data and information in sufficient detail and to determine whether a consolidated or separate returns should have been filed, as he subsequently did. The period of limitation prescribed by statute is one of repose and it should not lightly be construed to permit the respondent to reopen cases upon the ground that the return filed in good faith was not the return required by statute. We held in the *Stetson & Ellison* case, *supra*, that under a similar state of facts the consolidated return was sufficient to start the running of the period of limitation.

As the period prescribed by law for making assessment and collection of tax expired on May 15, 1925, and as the consent or agreement between the petitioner and the respondent dated November 21, 1924, extended the period for only one year from the expiration of that period, or until May 15, 1926, we think the assessment and collection of the deficiency for 1919 was barred at the time of the mailing of the notice of deficiency on September 2, 1926.

In the above view we have taken of the deficiency for 1919, it becomes unnecessary to consider the alternative issue as to whether the petitioner is entitled to a deduction on account of loss sustained on the sale of the turpentine rights.

The remaining issue, which relates to the deficiency for 1920, involves the question as to whether the petitioner is entitled to any greater deduction for depreciation on its sawmill machinery and equipment than $22,189.73, the amount allowed by the respondent in determining the deficiency.

The petitioner admits that the unit of production method as used by the respondent is the proper method for determining depreciation in this case. There being no controversy over the method of determining the deduction, the issue in this respect is limited as to what was the amount of timber available during the taxable years. The respondent contends that 30,000,000 feet of timber was available to the petitioner in 1918. The petitioner contends that only 18,464,425 feet were available. That was all the timber owned by the petitioner in 1918. The respondent's position is that notwithstanding the fact that the petitioner actually owned less than the 30,000,000 feet, that quantity was available to it.

The petitioner began business in 1918 and in that year purchased 18,464,425 feet of timber. While it acquired other timber during subsequent years down through 1923, this fact is not sufficient to convince us that during 1918 other timber was available to the petitioner. The fact that there was other timber in the vicinity of petitioner's operations is not alone determinative of whether such timber was available. Although the petitioner purchased a large amount of timber in 1922, it would have been unable to have financed the purchase of it in 1918, 1919, or 1920. The evidence shows that other mills were operating near the petitioner, and that prior to the time timber was offered for sale to it there would have been no basis for assuming that it instead of the other mills would be able to acquire the additional timber or any part thereof. The other timber was apparently no more available to the petitioner than any of the other mills. There is no more reason in determining the timber available to the petitioner to add the difference between what it owned and the 30,000,000 feet, than for determining that the other timber not owned by petitioner was available to each of the other mills. This manifestly would have been unreasonable. The availability of the timber supply should be considered in the light of facts known during the taxable years and those which could reasonably have been anticipated. Whether the petitioner would or could acquire other timber depended on facts and circumstances not known during the taxable years. It knew what its timber supply was in the taxable years, but it did not know and we can not find that it could have reasonably anticipated that it could have acquired an additional supply. That depended on future conditions, market prices and the contingency that others might or might not acquire any other timber in the vicinity of its operations. In view of the facts in the case, we do not think it fairly can be said that in 1918 there were 30,000,000 feet of timber available to the petitioner as the respondent has determined.

In our opinion, for 1920 the petitioner is entitled to a deduction for depreciation computed on the basis of an available timber supply

in 1918 of 18,464,425 feet and depreciable property having a cost of $37,432.90 at the beginning of operations in 1918. In computing depreciation for 1920 effect should be given to the amount of additional timber purchased during 1919 and 1920 as well as to the additions made to the physical property during those years. Effect should also be given in the computation to the salvage value of depreciable property acquired in 1918 and the additions thereto in 1919 and 1920 as set out in the findings of fact.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*